UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DARRIN BROOKS                                    CIVIL ACTION

VERSUS                                           NO. 05-3004

N. BURL CAIN, WARDEN                             SECTION "F"(5)

## REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. §2254(e)(2).  Accordingly;

IT IS HEREBY RECOMMENDED that the instant petition be **DENIED WITH PREJUDICE.**

## I.  PROCEDURAL HISTORY[1]

Petitioner, Darrin Brooks, is a state prisoner currently incarcerated in the Louisiana State Penitentiary, Angola, Louisiana.  An Orleans Parish grand jury indicted petitioner on two counts of aggravated rape and one count of attempted forcible rape. A jury trial was held; however, a mistrial was declared after the jury failed to reach a verdict.  A second trial was held, and the jury found petitioner guilty as charged on all counts.  The trial court sentenced petitioner to concurrent terms of life imprisonment without benefit of parole on each count of aggravated rape and a concurrent term of 30 years on the attempted forcible rape conviction.

On February 6, 2002, the Louisiana Fourth Circuit Court of Appeal affirmed petitioner's convictions and sentences for counts one and two, but vacated petitioner's 30-year sentence for count three and remanded the matter "for resentencing on count three." State v. Brooks, 812 So.2d 159, No. 2001-KA-0239 La. App. 4 Cir. 2002) (unpublished opinion).[2]  On February 14, 2003, the Louisiana

---

[1]Portions of the procedural history are taken from the Louisiana Fourth Circuit Court of Appeal's unpublished opinion, State v. Brooks, 812 So.2d 159, No. 2001-KA-0239 (La. App. 4 Cir. 2002), a copy of which is contained in the State rec., vol. 3 of 5.

[2]The court explained the basis of its remand as follows:
        A review of the record for errors patent reveals that the district court failed to wait [24] hours after denying Brooks' Motion for New Trial before sentencing him, as provided in La. C.Cr.P. art. 873.  However,

Supreme Court denied petitioner's writ application. State v. Brooks, 836 So.2d 133 (La. 2003).

Following the completion of his direct appeal proceedings, petitioner sought post-conviction relief. Petitioner's efforts in this regard culminated on March 11, 2005, when the Louisiana Supreme Court denied his writ application. State ex rel. Brooks v. State, 896 So.2d 59 (La. 2005).

In the instant federal habeas corpus action, petitioner raises the following claims: 1) There was no probable cause for his arrest and the testimonial evidence used against him was obtained illegally; 2) The evidence was insufficient to support his convictions; 3) The trial court erred in allowing him to be tried twice; 4) The prosecution knowingly used false testimony; 5) The trial court erred in failing to provide him with a transcript of his first trial; 6) The law governing the selection of the Orleans Parish grand jury which indicted him was unconstitutional; 7) He was denied effective assistance of counsel. In its Response (rec. doc. 26), the State concedes that the instant action is timely and that petitioner, as required under Rose v. Lundy, 455 U.S. 509 (1982), has exhausted his state court remedies. Before proceeding

---

because Brooks does not challenge his sentence on counts one and two the failure to observe the delay is harmless error as to those sentences. State v. Collins, 584 So.2d 356, 359 (La. App. 4th Cir. 1991).

Brooks, No. 2001-KA-0239 at p. 3.

to the merits, the court shall review the applicable facts.[3]

In August, 1998, an Orleans Parish grand jury indicted petitioner on two counts of aggravated rape and one count of attempted forcible rape.[4] At trial, New Orleans Police Detective Aaron Blackwell[5] testified that on June 19, 1998, he was assigned the responsibility of investigating alleged rapes perpetrated by petitioner upon his stepdaughters. As a result of his investigation, a warrant for petitioner's arrest was issued.

Sharonda James, petitioner's stepdaughter, testified at trial that she and her younger sister, Sheila James, were "raped" by petitioner, who was married to Sharon James, the girls' mother. Sharonda James testified that after telling her mother about the rape the morning after it had occurred, petitioner was confronted and denied the accusation. Sharonda James testified that on another occasion petitioner came into her bedroom, attempted to choke her, but was rebuffed in his effort to disrobe her.

---

[3]The facts are taken from the Louisiana Fourth Circuit Court of Appeal's opinion, State v. Brooks, 812 So.2d 159, No. 2001-KA-0239 (La. App. 4 Cir. 2002)(unpublished opinion), along with this court's review of the trial transcript.

[4]Copies of the grand jury indictments are contained in the State rec., vol. 3 of 5.

[5]In its opinion, Brooks, No. 2001-KA-0239, the Louisiana Fourth Circuit refers to the investigating officer as "Aaron Brooks". However, a review of the trial transcript reveals that the officer's name was "Aaron Blackwell". See State rec., vol. 2 of 5, trial transcript at p. 13.

4

Derrick Brooks, petitioner's son, corroborated Sharonda James testimony to the effect that his father, on one occasion, tried to choke Sharonda.[6]   Petitioner's other son, Darrin Brooks, Jr., testified that he saw his father "[c]limb on top of [his] sister" and "tr[y] to get in her booty".[7]

Sheila James testified that in December of 1997, petitioner put his penis in her "backside" and that on another occasion petitioner had her pull her pants down and he "got on top of her". Sheila James testified that on her birthday, petitioner attempted to engage in activities with both sisters, Sharonda and Sheila, but was rebuffed.

Sharon James testified at trial that she did not inform the police about what had happened because she was afraid.   She testified that petitioner told her that if she told anyone she would "not live to see the next day".   She also testified that a neighbor confronted her about the incidents after the girls had been at the neighbor's house, and that it was the neighbor who informed the police.

Dr. Scott Benton testified at trial as an expert in pediatric forensics.   He testified that he performed examinations on Sharonda

---

[6]See State rec., vol. 2 of 3, trial transcript at p. 131, lines 1-2; and p. 135, lines 2-3.

[7]See State rec., vol. 2 of 3, trial transcript at p. 119, line 32; and p. 124, lines 23-26.

James and Sheila James.  By way of history, Dr. Benton testified that Sharonda James told him that her stepfather "molested her" which she described in detail.  He testified that Sharonda's description led him to conclude that petitioner allegedly committed an act of anal intercourse.  However, Dr. Benton concluded that neither Sharonda James nor Sheila James showed any signs of anal penetration and that their physical examinations did not corroborate their accusations.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a comprehensive overhaul of federal habeas corpus legislation, including 28 U.S.C. §2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law where there has been an adjudication on the merits in state court proceedings.

State court determinations of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. §2254(d)(1) and receive deference unless they were "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States."  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).  The United States Supreme Court has advised that:

Under the "contrary to" clause, a federal habeas corpus

6

> court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 1056 (2000); Hill, 210 F.3d at 485. Questions of fact found by the state court are "presumed to be correct ... and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill, 210 F.3d at 485 (quoting 28 U.S.C. §2254(d)(2)).

**III. ANALYSIS**

**A.  No Probable Cause for Arrest and Evidence Obtained Illegally**

Petitioner's argument that his Fourth Amendment rights were violated is two-pronged.  First, petitioner argues that probable cause did not exist to justify his arrest since his arrest was initially based upon information police received from "an anonymous person".[8]  On this issue, the Court notes that it has long been

---

[8]Petitioner explains that New Orleans Police "Detective Blackwell testified that an anonymous person went to the [p]olice [s]tation and reported overhearing a lady say that she heard that the children (victims) had been assaulted by [p]etitioner", and it was based upon this initial "tip" that police officials questioned the victims, then later arrested petitioner. See Federal rec., doc. 1, petitioner's supporting memorandum at p. 6.  Detective Blackwell

recognized that illegal arrest or detention does not void a subsequent conviction. Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854 (1975). As this is a petition for habeas corpus relief, petitioner's argument is of no relevance. Second, petitioner argues that probable cause did not exist to justify the entry into and search of his home. This court, however, need not address the merits of the above argument due to the mandate enunciated in Stone v. Powell, 428 U.S. 465 (1976). In Stone, the United States Supreme Court concluded:

> [W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

Id. at 481-482 (footnote omitted).

In interpreting Stone, the Fifth Circuit has opined that an "opportunity for full and fair litigation" means just that: "an opportunity." Janecka v. Cockrell, 301 F.3d 316, 320 (5th Cir. 2002), cert. denied, 537 U.S. 1196 (2003)(citing Caver v. Alabama,

_____

testified at trial that his investigation into the matter was prompted when he was contacted by a district patrol uniform officer who "had been flagged down by a concerned citizen" and informed of the alleged child abuse. Thereafter, Detective Blackwell interviewed the victims, the victims' mother, and the "concerned citizen", Vivian Duncan, who first reported the matter. It was based upon the information received from these interviews that a warrant was applied for and issued for petitioner's arrest. See State rec., vol. 2 of 5, trial transcript at pp. 13-20.

577 F.2d 1188, 1192 (5th Cir. 1978)).  Even if a defendant fails to take advantage of his opportunity to litigate his Fourth Amendment claim, the fact that the opportunity was there suffices for the Stone bar to apply.  Janecka, 301 F.3d at 320.  Furthermore, the Fifth Circuit has held that the Stone bar applies despite an error by the state court in deciding the merits of a Fourth Amendment claim.  Swicegood v. Alabama, 577 F.2d 1322, 1324-1325 (5th Cir. 1978).

In the present matter, petitioner does not contend that he was deprived of the opportunity to litigate his Fourth Amendment claim fully and fairly in the state court system.  In fact, in support of his claim, petitioner refers the court to his preliminary hearing transcript.[9]

Additionally, the Louisiana Fourth Circuit addressed petitioner's Fourth Amendment claim on direct appeal, noting that petitioner's "complaint regarding the alleged search is ... without merit as there is no indication that any evidence was seized, and the [S]tate did not introduce any evidence taken from his home or his person."  With regard to petitioner's claim regarding a lack of probable cause for his arrest, the state appellate court observed that petitioner had failed to make the requisite prejudice

---

[9]See Federal rec., doc. 1, petitioner's supporting memorandum at p. 6.  A copy of the transcript of petitioner's June 29, 1998 preliminary hearing is contained in the State rec., vol. 2 of 3.

showing.[10]    Thereafter, the Louisiana Supreme Court addressed petitioner's Fourth Amendment argument, albeit by rejecting it, in denying his writ.  Brooks, 836 So.2d 133.

In short, petitioner's Fourth Amendment claim is not properly before the court because the requirements set forth in Stone have been met through state court proceedings.    Accordingly, petitioner's claim for habeas corpus relief is without merit.

**B.  Evidence Was Insufficient to Support His Convictions**

When conducting a sufficiency of the evidence review, courts generally adhere to the standard set forth by Jackson v. Virginia, 443 U.S. 307 (1979). In Jackson, the Court held that a claim of insufficient evidence would lie if, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could not have found the essential elements of the crime proven beyond a reasonable doubt.

Petitioner was convicted of two counts of aggravated rape. Aggravated rape, at the time the crimes were committed and at the time of petitioner's trial, was defined under LSA-R.S.14:42, in pertinent part, as follows:

> A.  Aggravated rape is a rape committed ... where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:

---

[10]See Brooks, No. 2001-KA-0239 at p. 6.

> (4) When the victim is under the age of twelve
> years. Lack of knowledge of the victim's age shall not
> be a defense.[11]

Petitioner was also convicted of attempted forcible rape. Forcible rape, at the time the crime was committed and at the time of petitioner's trial, was defined under LSA-R.S. 14:42.1, in pertinent part, as follows:

> A. Forcible rape is rape committed when the anal or
> vaginal sexual intercourse is deemed to be without the
> lawful consent of the victim because it is committed
> under any one or more of the following circumstances:
>
> (1) When the victim is prevented from resisting
> the act by force or threats of physical violence under
> circumstances where the victim reasonably believes that
> such resistance would not prevent the rape.[12]

Attempt, at the time petitioner committed the offense and at the time of his trial, was defined under LSA-R.S. 14:27, in pertinent part, as follows:

> A. Any person who, having a specific intent to commit
> a crime, does or omits an act for the purpose of and
> tending directly toward the accomplishing of his object
> is guilty of an attempt to commit the offense intended;
> and it shall be immaterial whether, under the
> circumstances, he would have actually accomplished his
> purpose.

---

[11]Subsection A of LSA-R.S. 14:42 was amended by Acts 2001, No. 301, §1 to insert "oral", after "anal" in the introductory paragraph. Acts 2003, No. 795, §1 substituted "thirteen years" for "twelve years" in par. (A)(4).

[12]Acts 2001, No. 301, §1 inserted "oral", after "anal" in the introductory paragraph of subsection A of LSA-R.S. 14:42.1.

11

Petitioner claims that a rational trier of fact could not have found him guilty due to the weakness of the testimony offered by the State's expert witness, Dr. Scott Benton. Specifically, Dr. Benton "testified that he did not find any physical or scientific evidence of any sexual abuse, on either of the victims."[13]

A review of the trial transcript reflects that petitioner's summary, set forth above, of Dr. Benton's testimony is correct. Dr. Benton's examinations of the victims were normal, showing no signs of sexual abuse.  However, Dr. Benton explained that the absence of physical evidence of a rape involving penetration of the anus is not unusual.  Benton explained that the tissue which lines the anus, referred to as "mucosa tissue", is resilient, designed to withstand trauma, and it heals quickly.[14]

The following testimony of the victims clearly reveals a basis for the jury's verdict of guilty on two counts of aggravated rape.  The older of the two victims, Sharonda James, testified that she was presently, i.e., at the August, 1999 trial, 13 years old, that her birthday was February 18th, and therefore, at the time when petitioner raped her, in January,

---

[13]See Federal rec., doc. 1, petitioner's supporting memorandum at pp. 8-9.

[14]See State rec., vol. 2 of 5, trial transcript at p. 73.

1998, she was 11 years old.[15]  Sharonda testified that she was
lying face down on her bed and the petitioner proceeded to get on
top of her and put his penis in "[her] rear."  She stated that it
hurt, that she was crying, that she asked him to stop, saying,
"Leave me alone, leave me alone", but petitioner, rather than
stopping, told her to "[s]hut up".[16]  Sheila James, Sharonda's
younger sister, testified that in August, 1999, at the time of
the trial, she was 12 years old, that her birthday was June 9th,
and therefore, on December 3, 1997, the date petitioner raped
her, she was 10 years old.[17]  Sheila stated that she saw
petitioner enter the bedroom she shared with her sister,
Sharonda, she told him to "[g]et out", but petitioner paid no
attention and proceeded to get in bed with her and told her "to
pull down her pants".[18]  When Sheila complied, petitioner "pulled
down his pants", "got on top of [her] and started humping [her]."
Sheila explained that she was lying on her stomach and that
petitioner put "[h]is penis" in her "backside".[19]

     In addition to the above-described rapes, first the rape of

_____

[15]See State rec., vol. 2 of 5, trial transcript at pp. 33-35.

[16]See State rec., vol. 2 of 5, trial transcript at pp. 40-41.

[17]See State rec., vol. 2 of 5, trial transcript at pp. 96, 106.

[18]See State rec., vol. 2 of 5, trial transcript at pp. 98-99.

[19]See State rec., vol. 2 of 5, trial transcript at pp. 99-100.

10-year old Sheila James in December, 1997, then the rape of 11-year old Sharonda James in January, 1998, both victims offered testimony with respect to petitioner's later attempted rape. Sheila testified that on the night of her birthday, June 9, 1998, she was sharing a bed with Sharonda, along with "two brothers", "Derrick and Darrin" who, at the time of the incident, were "[s]even and eight", respectively.[20]  She stated that on this occasion, petitioner came into the room, "locked the door with his knife", "sat on the bed" next to Sharonda, and when Sharonda started screaming, he "tr[ied] to choke her".[21]  Thereafter, when Sheila attempted to get out of the bed, petitioner informed that if she moved, "he'd break [her] neck".  Petitioner, at that point, proceeded to get out of the bed and left the room.[22]

Sharonda similarly testified that on the night of Sheila's birthday, petitioner entered their room and attempted to choke her and pull down her pants.  Sharonda further corroborated Sheila's testimony to the effect that when Sheila started moving around, petitioner threatened that he would "break her neck" if she tried to leave the bed.[23]

---

[20]See State rec., vol. 2 of 5, trial transcript at p. 106.

[21]See State rec., vol. 2 of 5, trial transcript at p. 109.

[22]See State rec., vol. 2 of 5, trial transcript at p. 110.

[23]See State rec., vol. 2 of 5, trial transcript at pp. 43-45.

14

Viewing the above-described evidence in a light most favorable to the prosecution, it was clearly sufficient to justify the jury's verdict of guilty on two counts of aggravated rape and one count of attempted forcible rape.  Accordingly, the court finds that petitioner's claim for habeas corpus relief is without merit.

## C.  Trial Court Erred in Allowing Petitioner to be Tried Twice

Petitioner argues that his constitutional protection against double jeopardy was violated when he was twice placed on trial for two counts of aggravated rape and one count of attempted forcible rape.  However, as the Louisiana Fourth Circuit Court of Appeal observed in denying the instant claim on direct appeal, there is no double jeopardy bar in a situation such as this where a mistrial is declared and the jury is dismissed because the jury is unable to agree upon a verdict.  See Brooks, No. 2001-KA-0239 at p. 8.  The state appellate court's finding in this regard is supported by firmly established Supreme Court precedent.  As the Court observed in Richardson v. U.S., 468 U.S. 317, 324 (1984):

> [W]e have constantly adhered to the rule that a retrial following a "hung jury" does not violate the Double Jeopardy Clause.  Logan v. United States, 144 U.S. 263, 297-298, 12 S.Ct. 617, 627-628, 36 L.Ed. 429 (1892).  Explaining our reasons for this conclusion in Arizona v. Washington, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978), we said:
>
>> [W]ithout exception, the courts have held

15

> that the trial judge may discharge a
> genuinely deadlocked jury and require the
> defendant to submit to a second trial.  This
> rule accords recognition to society's
> interest in giving the prosecution one
> complete opportunity to convict those who
> have violated its laws. Id., at 509, 98
> S.Ct., at 832.

Accordingly, petitioner's claim for habeas relief based upon an

alleged double jeopardy violation is without merit.

### D.  Prosecution Knowingly Used Inconsistent and/or False Testimony

Petitioner points to inconsistencies between the victims'

pre-trial statements/testimony and their trial testimony,

suggesting that their trial testimony was false and that the

State knew the victims were providing false testimony.  In

addressing the instant claim on direct appeal, the Louisiana

Fourth Circuit Court of Appeal examined applicable law, stating:

> To establish a due process violation based on the
> [S]tate's knowing use of false or misleading evidence,
> a defendant must show (1) the evidence was false, (2)
> the evidence was material, and (3) the prosecution knew
> that the evidence was false.  Giglio v. United States,
> 405 U.S. 150, 153-154, 92 S.Ct. 763, 765-766, 31
> L.Ed.2d 104 (1972).

Brooks, No. 2001-KA-0239 at p. 7.  The state appellate court

concluded that "Brooks has not established any facts to indicate

that any witnesses presented false evidence."  Id.  Further, this

court's review of defense counsel's cross-examinations of the

16

victims, Sharonda and Sheila James,[24] reveals that
inconsistencies between their earlier versions of events and
their trial testimony were brought to the jury's attention.

Petitioner further contends that witnesses appeared at court
to testify against him only because they were threatened by
police and prosecutors.  In rejecting this claim on direct
appeal, the Louisiana Fourth Circuit Court of Appeal reasoned:

> [Brooks'] arguments regarding coerced statements are
> misplaced.  He confuses a coerced confession by a
> defendant with a statement by a witness.  The [S]tate
> has the constitutional authority, as does a defendant,
> to compel a witness to testify by virtue of a subpoena.
>
> In any case, Brooks argues essentially that the
> [S]tate exerted unreasonable pressure on the witnesses
> to testify.  He alleges that the victim's mother was
> threatened with loosing [sic] custody if her children
> did not testify, and that D.B.1 was told he would be
> punished if he did not testify that he had witnessed
> Brooks' actions.  Brooks' allegations are completely
> unsupported.  The only tangible evidence he offers to
> support this allegation is the fact that the two
> sisters indicated that they met with various assistant
> district attorneys prior to trial on a number of
> occasions.  This fact does not establish that they were
> coerced into testifying.  Furthermore, no witness
> indicated on direct or cross-examination that he or she
> was coerced or intimated [sic] into testifying.

Brooks, No. 2001-KA-0239 at p. 7.

This court's review of the trial transcript reflects that
just as the state appellate court represented, no witness, at

---

[24]See State rec., vol. 2 of 5, trial transcript, testimony of
Sharonda James at pp. 58-61; testimony of Sheila James at pp. 115-
119.

trial, indicated that he or she was coerced into testifying or that coercion on the part of the State led him or her to offer false testimony.  Accordingly, the court finds that petitioner has failed to satisfy his burden of proof and is not entitled to habeas corpus relief.

### E. Trial Court Erred in Failing to Provide Him with a Transcript of His First Trial

As was noted in this court's review of the pertinent procedural history, petitioner's first trial on the charges of aggravated rape and attempted forcible rape ended in a mistrial when the jury failed to reach a verdict.  Following the mistrial, petitioner "filed a pro se Motion for Production of Documents" in which he requested, among other material, "a copy of the transcript of the first trial".[25]  Petitioner contends that the trial court's failure to provide him with a copy of the requested transcript constituted a violation of his constitutional rights as he was unable to challenge the consistency of the witnesses' testimony in the second trial as compared to what they had stated during the first trial.

A review of the pertinent transcript reflects that shortly before his second trial commenced, petitioner informed the trial judge, Orleans Parish Criminal District Court Judge Sharon

---

[25]See Federal rec., doc. 1, petitioner's supporting memorandum at p. 17; see also doc. 34, petitioner's traverse at p.7.

Hunter, that he required a continuance of the trial because he had not received the materials he had earlier requested. Petitioner then proceeded to reiterate his document requests, informing whether he had or had not received the requested materials.

MR. BROOKS:

I need the prosecution to provide any and all exculpatory material known to any agent of the State ... includ[ing] but ... not limit[ed] to any and all materials that in any way, shape, form shows that the defendant is not guilty of the offense charged, any material that tends to exculpate the defendant of the offense charged in any way [such] as any victim[] and/or witness [statements] at any time or in any way [which] indicate[] to any agent of the State that the offense charge did not occur or occurred in any fashion different than that charged, including but not limited to instances where such victim or victims and/or witnesses later recant or change[] their statement.

THE COURT:

Do you have that?

MR. BROOKS:

I have that.

THE COURT:

All right.  Now, what else would you like?

MR. BROOKS:

Okay.  Please provide any information known to agents of the State of Louisiana as to matters which reflect[] upon the truthfulness or lack of truthfulness of any - - Okay.  Got that.

THE COURT:

19

You've got that, right?

MR. BROOKS:
    Okay.

THE COURT:
    All right.[26]

Following the above exchange, petitioner next informed that he had requested:  "Inconsistent statements and criminal records".  With respect to the requested inconsistent statements, petitioner elaborated that he needed the transcript from his first trial, specifically stating:  "I don't have the transcripts of the trial.  That's what I'm requesting."[27]

As with petitioner's other document requests, the trial judge, with regard to petitioner's request for the trial transcript, inquired as to whether petitioner, or his counsel, in fact, had the transcript.  In response to the court's inquiry, counsel stated that the court reporter had informed him that the transcript was available and the court, apparently believing that counsel, or his office, "OIDP", had the transcript in his possession, ordered that petitioner be provided with the

---

[26]See State rec., vol. 3 of 5, transcript of "motion for continuance and exculpatory material" at p. 5, lines 2-32; p. 6, lines 1-8.

[27]See State rec., vol. 3 of 5, transcript of "motion for continuance and exculpatory material" at p. 6, lines 10-11 and 16-17.

transcript.[28]  Upon further explanation by counsel, informing that he, in fact, did not have a full copy of the trial transcript,[29] petitioner, rather than pursuing the matter, proceeded to his next discovery topic.  Specifically, as the Louisiana Fourth Circuit noted, see Brooks, No. 2001-KA-0239 at p. 5, petitioner "requested information regarding criminal records of any of the [S]tate['s] witnesses, and inquired regarding other discovery information."[30]

Once petitioner had exhausted the topics encompassed by his earlier motion for production of documents, the hearing on his motion to continue his second trial, as the Louisiana Fourth Circuit observed, see Brooks, No. 2001-KA-0239 at p.5, concluded with petitioner informing that he was ready to proceed to trial.[31]  Based upon petitioner's representation in this regard and the fact that "[n]o subsequent objections were lodged regarding not receiving the transcript", the state appellate

---

[28]See State rec., vol. 3 of 5, transcript of "motion for continuance and exculpatory material" at p. 6, lines 18-32; p. 7, lines 1-11.

[29]See State rec., vol. 3 of 5, transcript of "motion for continuance and exculpatory material" at p. 7, lines 12-32; p. 8, lines 1-9.

[30]See State rec., vol. 3 of 5, transcript of "motion for continuance and exculpatory material" at p. 8, lines 10-32; p. 9, lines 1-32; p. 10, lines 1-32; and p. 11, lines 1-9.

[31]See State rec., vol. 3 of 5, transcript of "motion for continuance and exculpatory material" at p. 11, lines 21-22.

court held, pursuant to La. C.Cr.P. art. 841, that petitioner was precluded from raising the instant claim.  See Brooks, No. 2001-KA-0239 at p. 5.

La. C.Cr.P. art. 841 provides, in pertinent part, that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence."  The Louisiana Fourth Circuit Court of Appeal concluded that "it was incumbent upon Brooks to raise an objection or alert the court that its order granting his request [for the transcript from his first trial] had not been carried through."  Brooks, No. 2001-KA-0239 at p. 5.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment.  Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); Glover v. Cain, 128 F.3d 900, 902 (5th Cir.1997); Amos v. Scott, 61 F.3d 333, 338 (5th Cir.1995) (citing Harris v. Reed, 489 U.S. 255, 260, 262 (1989)).  This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review.  Amos, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state

22

court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. <u>Harris</u>, 489 U.S. at 263; <u>Glover</u>, 128 F.3d at 902. When the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, it is presumed that the court relied upon the same grounds as the last reasoned state court opinion. <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 802 (1991).

For this state-imposed procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate. A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. <u>Amos</u>, 61 F.3d at 338. To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. <u>Glover</u>, 128 F.3d at 902. A state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief. <u>Id</u>.

In the instant situation, the Louisiana Fourth Circuit issued the last reasoned decision, clearly declining to review petitioner's claim that the trial court erred in not providing him with a copy of the transcript from his first trial on the procedural ground that petitioner, in violation of La. Code Crim.

P. art. 841(A), failed to lodge a contemporaneous objection.  It
is well-settled that Louisiana's contemporaneous objection rule
is an independent and adequate state procedural ground.  <u>Duncan</u>
<u>v. Cain</u>, 278 F.3d 537, 541 (5th Cir.2002) (citing <u>Wainwright v.</u>
<u>Sykes</u>, 433 U.S. 72, 87-88 (1977)). When the state court relies on
this procedural default in dismissing the claim, as it did here,
the claim is immune from federal review.  <u>Id</u>.

        A federal habeas petitioner, however, may be excepted from
the procedural default rule if he can show "cause" for his
default and "prejudice attributed thereto," or demonstrate that
the federal court's failure to review the defaulted claim will
result in a "fundamental miscarriage of justice." <u>Glover</u>, 128
F.3d at 902 (citing <u>Coleman</u>, 501 U.S. at 731-32); <u>Amos</u>, 61 F.3d
at 338-39 (citing <u>Harris</u>, 489 U.S. at 262; <u>Engle v. Isaac</u>, 456
U.S. 107, 129 (1982)).

        To establish cause for a procedural default, a petitioner
must demonstrate that some objective factor external to the
defense impeded his efforts to comply with the state's procedural
rule. <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986).  The mere
fact that petitioner failed to recognize the factual or legal
basis for a claim, or failed to raise the claim despite
recognizing it, does not constitute cause for a procedural
default. <u>Id</u>. at 486.

        In this case, petitioner has not offered any cause for the

                                    24

default which would excuse the procedural bar imposed by the Louisiana courts.  Further, this court's review of the record does not support a finding that any factor external to the defense prevented petitioner from raising the instant claim in a procedurally proper manner.  The record also does not reflect any action or inaction on the part of the State which prevented petitioner from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown."  Hoque, 131 F.3d 466, 497 (5th Cir.1997) (citing Engle, 456 U.S. at 134 n. 43).  Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice.  Ratcliff v. Estelle, 597 F.2d 474 (5th Cir.1979) (citing Lumpkin v. Ricketts, 551 F.2d 680, 681-82 (5th Cir.1977)).

Petitioner's claim is therefore procedurally barred from review by this federal habeas corpus court absent a showing that a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed.  Hoque, 131 F.3d at 497 (citing Sawyer v. Whitley, 505 U.S. 333, 339 (1992)).  To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence."  Kuhlmann v. Wilson, 477 U.S. 436, 454

25

(1986); accord Murray, 477 U.S. at 496; Glover, 128 F.3d at 902. To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to his guilt. Campos v. Johnson, 958 F.Supp. 1180, 1195 (W.D. Tx.1997) (footnote omitted); Nobles v. Johnson, 127 F.3d 409, 423 n. 33 (5th Cir. 1997), cert. denied, 523 U.S. 1139 (1998) (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.")  When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. Glover, 128 F .3d at 903.

Petitioner does not present and the record does not contain evidence that suggests his actual innocence.  Accordingly, petitioner has failed to overcome the procedural bar to the instant claim.  As such, the claim is procedurally barred and must be dismissed with prejudice for that reason.

**F.   Unconstitutionality of Law Governing Selection of Grand Juries in Orleans Parish**

In August, 1998, petitioner was indicted by an Orleans Parish grand jury on the charges of two counts of aggravated rape and one count of attempted forcible rape.  The pertinent grand

jury was convened pursuant to the provisions of LSA-C.Cr.P. Art. 413(C) which provided:  "In the parish of Orleans, the court shall select twelve persons plus a first and second alternate for a total of fourteen persons from the grand jury venire, who shall constitute the grand jury.  The court shall thereupon select one of the jurors to serve as foreman."  In June, 2003, the Louisiana Supreme Court held that Article 413(C), along with Article 412 and portions of Article 414, was an unconstitutional local law within the meaning of Article III, §12 of the Louisiana Constitution.  See State v. DiLosa, 848 So.2d 546 (La. 2003). Petitioner argues that because the Louisiana Constitution, which Article 413(C) was deemed to be violative of, went into effect on January 1, 1975, Article 413(C), as of January 1, 1975, "became null and void".  As such, petitioner's 1998 indictment returned by an Orleans Parish grand jury "selected pursuant to Article 413(C) is invalid" and petitioner's "subsequent conviction[s] and sentence[s] for Aggravated Rape and Att. Forcible Rape should be vacated and set aside".[32]

It is axiomatic that federal habeas relief may be granted only to remedy violations of the United States Constitution and laws of the United States.  28 U.S.C. §2254(a); Engle v. Issac,

---

[32]See Federal rec., doc. 1, petitioner's supporting memorandum at pp. 21 and 23; see also Federal rec., doc. 34, petitioner's traverse at pp. 8-9.

456 U.S. 107 (1983); Bailey v. Procunier, 744 F.2d 1166, 1168
(5th Cir. 1984).  The fact that the procedure, as set forth in
LSA-C.Cr.P. Art. 413(C), pursuant to which petitioner's grand
jury was empaneled, was deemed to be a local law violative of the
state constitution, provides no basis to justify federal habeas
corpus relief.  Accordingly, petitioner's claim is without merit.


### G. Ineffective Assistance of Counsel

Petitioner argues that counsel was unconstitutionally
ineffective by virtue of his failure to file a motion to quash
his indictment based upon the fact that the grand jury was
empaneled pursuant to a law which was violative of Article III,
§12 of the Louisiana Constitution.  In Strickland v. Washington,
466 U.S. 668 (1984), the United States Supreme Court established
a two-prong test for evaluating claims of ineffective assistance
of counsel.  A petitioner seeking relief must demonstrate that
counsel's performance was deficient and that the deficient
performance prejudiced his defense.  See id. at 697.  If a court
finds that petitioner has made an insufficient showing as to
either of the two prongs of inquiry, i.e., deficient performance
or actual prejudice, it may dispose of the claim without
addressing the other prong.  Id.

To prevail on the deficiency prong, petitioner must
demonstrate that counsel's conduct fails to meet the

28

constitutional minimum guaranteed by the Sixth Amendment.  <u>See</u>
<u>Styron v. Johnson</u>, 262 F.3d 438, 450 (5th Cir.2001).  "Counsel's
performance is deficient if it falls below an objective standard
of reasonableness."  <u>Little v. Johnson</u>, 162 F.3d 855, 860 (5th
Cir.1998).  Analysis of counsel's performance must take into
account the reasonableness of counsel's actions in light of all
the circumstances.  <u>See</u> <u>Strickland</u>, 466 U.S. at 689.  "[I]t is
necessary to 'judge ... counsel's challenged conduct on the facts
of the particular case, viewed as of the time of counsel's
conduct.'"  <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 371 (1993)
(quoting <u>Strickland</u>, 466 U.S. at 690).  Petitioner must overcome
a strong presumption that the conduct of his counsel falls within
a wide range of reasonable representation.  <u>See</u> <u>Crockett v.</u>
<u>McCotter</u>, 796 F.2d 787, 791 (5th Cir.1986); <u>Mattheson v. King</u>,
751 F.2d 1432, 1441 (5th Cir.1985).

In order to prove prejudice with respect to trial counsel,
petitioner "must show that there is a reasonable probability
that, but for counsel's unprofessional errors, the result of the
proceeding would have been different."  <u>Strickland</u>, 466 U.S. at
694.  In this context, a reasonable probability is "a probability
sufficient to undermine confidence in the outcome."  <u>Id</u>.  In
making a determination as to whether prejudice occurred, courts
must review the record to determine "the relative role that the
alleged trial errors played in the total context of [the] trial."

Crockett, 796 F.2d at 793.

In the instant matter, the court finds that petitioner has failed to make the requisite prejudice showing in that, if petitioner had been successful in having his indictment quashed, the State of Louisiana would have sought and obtained a second indictment.  Given the strength of the State's case, specifically, the unrefuted testimony of the victims, Sharonda James and Sheila James, regarding the aggravated rapes, and the unrefuted testimony of not only the victims, but also of Darrin Brooks, Jr. and Derrick Brooks, regarding the attempted forcible rape,[33] a successful grand jury challenge would have served no purpose other than to delay the trial.  Accordingly;

## **RECOMMENDATION**

It is hereby RECOMMENDED that the petition of Darrin Brooks for habeas corpus relief be DENIED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such

---

[33]See discussion supra at pp. 4-5.

consequences will result from a failure to object.  <u>Douglass v.</u>

<u>United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this <u>2nd</u> day of <u>   August   </u>, 2007.

ALMA L. CHASEZ
United States Magistrate Judge